UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| W. CORDELL VICKERS, | | |
| | Plaintiff, | |
| -against- | | Case No.: 5:22-CV-554 (TJM/TWD) |
| HEATHER VICKERS RYAN | | **COMPLAINT** |
| | Defendant. | |

Plaintiff W. Cordell Vickers ("Plaintiff") by and through his attorneys, Abrams Fensterman, LLP, for his Complaint against the Defendant Heather Vickers Ryan ("Defendant"), alleges as follows:

## Introduction

1. This is an action for specific performance seeking Defendant's sale of her certain interest in a trust and real estate to Plaintiff for the amount of $225,000. In March 2021, Defendant agreed to transfer her interest in a trust and certain real estate to Plaintiff for the amount of $225,000. Defendant refused to close on the sale, now demanding an additional $25,000 to close. Plaintiff seeks Defendant's specific performance in connection with the contract and sale price of $225,000.

## Parties

2. Plaintiff is an individual with his principal place of residence in California, with a mailing address of P.O. Box 412, Bonsall, California 92003.

3. Defendant is an individual with her principal place of residence in Massachusetts, with an address of 140 Miles River Road, South Hamilton, MA 01982.

**Jurisdiction and Venue**

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as the real property which is the subject of this action is situated in Fair Haven, New York.

**Facts**

6. Plaintiff and Defendant (collectively, the "Parties") are brother and sister.

7. Several years ago, the Parties' parents left them a sizeable estate, including a piece of real property in Fair Haven, New York consisting of a fully furnished seasonal cottage and barn on lakefront lot real estate (the "Real Property"). A legal description of the Real Property is attached as Exhibit 1.

8. During the administration of the Parties' parents' estate, a number of disagreements and disputes arose between the Parties.

9. One of those disagreements arose when the Defendant filed a sworn statement with the United States Copyright Office claiming to be the author of her father's book so that she could take the royalties from the estate, conduct for which a California Judge made a finding that the Defendant had acted "fraudulently" and in "bad faith."

10. The Parties' parents' estate was probated in the Superior Court of the State of California, County of San Diego, North County Branch, Case No. 37-2009-00150435-PR=TR-NC, entitled "In the Matter of the Vickers Family 1989 Trust."

11. The Parties ultimately agreed to a global resolution of their differences and entered

into a settlement agreement (the "Settlement Agreement"), the terms of which included that the Real Property would be placed in trust so that both Parties would continue to enjoy the Property.

12. The trust would have a trustee who, among other things, was responsible for collecting equal shares of expenses from each Party for maintenance, taxes, utilities and repairs.

13. Consistent with the Settlement Agreement, the Property was delivered to a Trustee to be held in trust for both Parties, named the "Fair Haven 2012 Trust" (the "Trust").

14. For several years, the Parties abided by the terms of the Fair Haven 2012 Trust Agreement – sharing their time on the Property and paying equal shares of the Property expenses.

15. In or around 2018, Defendant stopped abiding by the terms of the agreement and stopped timely paying the Trust's tax and utility assessments.

16. During all times relevant to the complaint, Defendant also refused to pay for the repairs which were necessary to properly maintain the cottage on the Property. At the time of the drafting of this complaint, there is an active leak in the ceiling that allows rainwater to pour into the cottage.

17. During all times relevant to the complaint, Defendant routinely sent abusive emails to both Plaintiff and the trustee. She also demanded that the Property be rented to strangers.

18. Defendant's conduct continued to escalate and in or around 2019, Defendant demanded that the Trust be dissolved, and the Property be placed into the Parties' individual names without an agreement as to which Party would be responsible for paying the Property's expenses, maintaining the Property or determining a share schedule of the Property.

19. At the time, Defendant was in arrears with her share of Trust assessments and

remains so today.

20. Defendant's demands were inconsistent with the terms of the Settlement Agreement.

21. Plaintiff objected to the proposed dissolution of the trust and over a long period of time, attempted to mediate and resolve Defendant's complaints.

22. For over two years, Defendant violated the terms of the Trust including failing to pay her share of assessments relating to the Real Property.

23. During that time, Defendant also continued to harass both the trustee and Plaintiff with numerous disparaging and insulting emails.

24. On February 25, 2021, Defendant sent an email offer to the Plaintiff and his counsel that stated:

> You (Plaintiff) buy out my 50% share for $225,000, a price based on 2 Relators [sic] coming to the house last summer and the comps they provided, opportunity cost, rising market value, the contents of a fully furnished house, the contents of the barn (excluding my boats for which I have titles since I bought them) and most importantly, emotional value. I'm just as attached to the Property as you are and you know that, so for me to give up this property, you will have to pay for that emotional value. The price is non-negotiable but I would be open to payments in installments assuming a reasonable schedule.

A copy of the February 25, 2021 email is attached as Exhibit 2.

25. On March 1, 2021, Plaintiff accepted Defendant's offer in writing, stating:

> (Plaintiff) accepts the offer to purchase (Defendant's) interest for $225,000, with the understanding that (Defendant's) boats are not included and will be removed from the barn. (Plaintiff) will arrange to make a lump sum payment.

A copy of the March 1, 2021 email is attached as Exhibit 3.

26. Defendant acknowledged receipt of Plaintiff's acceptance through a series of emails and actions. This included, but was not limited to, the removal of her boats from the barn.

27. The Parties agreed that they would continue to share the Property during the summer (since Defendant and her family had already made plans) and then close the sales transaction after the summer.

28. Shortly after Plaintiff accepted Defendant's offer, he deposited $225,000 in the trust account of Abrams Fensterman, LLP (the "Funds"). The Funds have remained in that account since deposit.

29. At the end of the summer, Plaintiff executed and circulated an agreement memorializing the Defendant's sale of her interest in the Real Property and trust holding the Real Property.

30. On September 13, 2021, Defendant changed her mind and sent an email entitled "Ryan/Vickers Agreement is OFF." A copy of Defendant's September 13, 2021 email is attached as Exhibit 4.

31. On September 15, 2021, Defendant attempted to re-negotiate the terms by advising that she would move forward with the transaction if she did not have to pay her past due Trust assessments for the time that she was actively using the Property.

32. Plaintiff made several demands that Defendant close under the original contract price – including declaring time is of the essence – and Defendant refused.

33. As it turned out, Defendant wanted to and intended on renegotiating the agreed-upon purchase price which she previously stated was non-negotiable.

34. On March 15, 2022, Defendant advised that she sell her interests to Plaintiff as originally agreed to, but only if Plaintiff paid her $25,000 more and paid her past due Trust assessments.

35. On March 15, 2022, Defendant sent an email titled "Options" stating the following:

> 3) Buy out my half:  You can buy my half of the Property for the price we agreed on in March 2021 adjusting for the change in market value YTY which is about a 10% increase based on comps. Provided by my FH Realtor who anticipates the market value will continue to increase.  The March 2021 price was $450,000 to be divided by 2.  Now the price is $500,000 ($250,000 each) reflecting the increase in the market value of the Property only and not its contents … This price is non-negotiable …

A copy of the March 15, 2022 email is attached as Exhibit 5.

36. The sale of the Defendant's interest in the trust and Real Property and trust was scheduled to occur in the fall of 2021.

37. Since that time, the cottage has fallen into considerable disrepair.

38. As the cottage remains in the trust, Plaintiff has been unable to properly maintain the cottage because Defendant would not agree to fund the necessary repairs.

39. Defendant's actions have denied Plaintiff benefit of his bargain as he has been denied the exclusive use of the Property for the last six months, but he has also been injured as the deferred maintenance has significantly increased the cost of repair and decreased the value of the Property.

40. Plaintiff has been damaged in an amount that exceeds $50,000.

## **AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT**

41. Plaintiff repeats and realleges the foregoing with the same force and effect as if fully set forth herein.

42. The Parties entered into a binding and enforceable contract for the transfer of Defendant's interest in the Trust and Property for the amount of $225,000.

43. Plaintiff deposited the funds with his counsel and was ready to close.

44. Defendant breached the contract by refusing to close and attempting to renegotiate the sale price.

45. As a consequence of the Defendant's breach, Plaintiff has been denied the benefit of his bargain and damaged in an amount not less than $50,000.

**WHEREFORE**, Plaintiff is entitled to the following relief:

i. An order requiring Defendant to sell her interest in the trust and the Property for the amount of $225,000; and

ii. An order requiring Defendant to pay an amount of damages to Plaintiff that Plaintiff incurred as a result of Defendant's breach; and

iii. Such other and further relief as the Court deems proper.

Dated: Rochester, New York  
      May 24, 2022

ABRAMS FENSTERMAN, LLP

s/ Maureen T. Bass  
Maureen T. Bass, Esq.  
*Attorneys for Plaintiff*  
160 Linden Oaks, Suite E  
Rochester, New York  14625  
Telephone:  (585) 218-9999  
Email:  Mbass@abramslaw.com